IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| CINDY PEDERSEN, | CV 12–210–M–DWM |
| Plaintiff, | |
| | ORDER |
| vs. | |
| THE TJX COMPANIES, INC., | |
| Defendant. | |

## INTRODUCTION

Plaintiff Cindy Pedersen ("Pedersen") filed suit against Defendant The TJX Companies, Inc. ("TJX") pursuant to Montana's Wrongful Discharge from Employment Act, alleging TJX lacked good cause to terminate her employment and that the reasons TJX gave for her termination were merely a pretext. TJX filed a motion seeking summary judgment on all of Pedersen's claims. (Doc. 22.) Because no genuine issues of material fact remain, summary judgment is granted in favor of TJX for the reasons set forth below.

## BACKGROUND

TJX operates T.J. Maxx stores throughout the country. Pedersen worked at

the T.J. Maxx store in Missoula, Montana, from 2002 until her employment was terminated on January 17, 2012. (Def.'s SUF, doc. 24 at ¶ 3.) During the course of her employment, she worked as an hourly employee in multiple positions and, at the time of her termination, served as the Assistant Store Manager. (*Id.* at ¶ 3.)

On January 5, 2012, Pedersen went to Kalispell with 8 other T.J. Maxx employees to perform inventory at the Kalispell T.J. Maxx store. (*Id.* at ¶¶ 20-21.) Pedersen was the only managerial employee from the Missoula store to go to Kalispell. (*Id.* at ¶ 24.) T.J. Maxx paid for all the costs associated with the trip, including the hotel room, rental cars, gas, and breakfast. (*Id.* at ¶ 26.) After checking into the hotel in Kalispell, Pedersen drove three members of her inventory team to a local liquor store, where they purchased two twelve-packs of beer and a bottle of vodka. (*Id.* at ¶ 28.) The employees then went to the T.J. Maxx store, performing inventory from approximately 6 p.m. to 12:45 a.m., on the morning of January 6. (*Id.* at ¶ 29.) Upon completing inventory, the employees returned to the hotel and Pedersen joined up with four other employees (including nineteen-year old Cody Posio) and they drank the alcohol purchased earlier in the evening. (*Id.* at ¶¶ 30-31.)

Penny Dickey, the Missoula store manager, was told about the events of that night by one of the employees on the trip. Dickey then corroborated the incident

by a conversation with hotel staff the next morning.  (*Id.* at ¶¶ 35-38.)  District Manager Denis Lattin then began an investigation into Pedersen's conduct and he interviewed Pedersen.  Pedersen admitted to consuming alcohol the morning in question and that Posio was present at the time.  (*Id.* at ¶ 39.)  After speaking to the other employees involved, Lattin decided to terminate Pedersen's employment, and this decision was communicated to Pedersen by Dickey on January 17, 2012.  (*Id.* at ¶ 50.)

TJX publishes a Global Code of Conduct Guide ("Code of Conduct") on an annual basis.  (*Id.* at ¶ 7.)  Pedersen annually signed a certificate acknowledging she received and review the Code of Conduct.  (*Id.* at ¶ 8.)  The relevant provisions of the Code of Conduct state:

- "[N]one of us may report to work, come onto Company property, perform any job-related activity, or drive a company vehicle, while under the influence of alcohol or illegal drugs."  (*Id.* at ¶ 9.)
- "A conflict of interest exists when a personal interest or activity interferes with the duties that you perform for and owe to TJX.  You should always perform your duties with only the interests of the Company in mind."  (*Id.* at ¶ 14.)
- "Our culture of integrity and compliance starts at the top.  All members of management must not only fulfill their duties, but also assume responsibility for those who report to them.  If you are a supervisor, manager or executive you must carefully follow the principles listed below:
  - Earn respect and lead by example – your Associates expect you to do the right thing.
  - Understand this Code and all Company policies that affect your job and help Associates understand this information too.

- Promote compliance with the Code – even in difficult situations.
- Create an environment of integrity, accountability and mutual respect that supports doing the right thing." (*Id.* at ¶ 18.)

The Code of Conduct states that "violat[ions] of the Code, Company policies, or the law . . . may result in discipline, up to and including termination . . . ." (*Id.* at ¶ 7.)

## SUMMARY CONCLUSION

T.J. Maxx had cause to terminate Pedersen and Pedersen has failed to demonstrate any genuine issues of material fact remain or to produce sufficient evidence that the reason for her termination was a pretext. TJX's motion for summary judgment (doc. 22) is granted for the reasons set forth below.

## STANDARD

A party is entitled to summary judgment if it can demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is warranted where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251 (1986). Only disputes over facts that might affect the outcome of the lawsuit will preclude entry of summary judgment; factual disputes that are irrelevant or unnecessary to the outcome are not considered. *Id.* at 248.

**ANALYSIS**

TJX maintains that it had good cause to terminate Pedersen's employment based on her conduct during the Kalispell trip and that no genuine issues of material fact remain. Pedersen insists that TJX had no basis to terminate her because the conduct in question occurred outside of her employment and fact disputes remain as to whether the Code of Conduct prohibited drinking. Contrary to Pedersen's argument, no genuine issues of material fact remain so that TJX is entitled to a judgment as a matter of law.

The Wrongful Discharge from Employment Act provides that it is unlawful to discharge an employee if "the discharge was not for good cause and the employee had completed the employer's probationary period of employment[.]" Mont. Code Ann. § 39-2-904(1)(b) (2013). To defeat a motion for summary judgment, an employee may "either prove that the reason given for the discharge is not 'good cause' in and of itself, or that the given reason is a pretext and not the honest reason for the discharge." *Becker v. Rosebud Operating Servs.*, 191 P.3d 435, 441 (Mont. 2008) (internal quotation marks and citation omitted). The employee must present "evidence, [] not mere speculation or denial." *Kestell v. Heritage Health Care Corp.*, 858 P.2d 3, 8 (Mont. 1993).

## I.    TJX had good cause to terminate Pedersen's employment.

TJX has established by uncontroverted facts that it had good cause for terminating Pedersen.  "Good cause" is defined as "reasonable job-related grounds for dismissal based on a failure to satisfactorily perform job duties, disruption of the employer's operation, or other legitimate business reason." § 39-2-903(5).  A legitimate business reason is one that is "neither false, whimsical, arbitrary or capricious, and it must have some logical relationship to the needs of the business." *Kestell*, 858 P.2d at 7 (internal quotation marks and citation omitted).  "It is not arbitrary to 'terminate an employee who acted inappropriately some, but perhaps not all, of the time[.]'" *Berg v. TXJ Cos.*, 2013 WL 3242472 *4 (D. Mont. June 24, 2013) (quoting *Sullivan v. Contl. Const. of Mont., LLC*, 299 P.3d 832, 838 (Mont. 2013)).  In analyzing "good cause," the Montana Supreme Court has "stressed the importance of the right of an employer to exercise discretion over whom it will employ and keep in employment." *Sullivan*, 299 P.3d at 835 (internal quotation marks and citation omitted).  The Court "afford[s] employers the greatest discretion" where an employee occupies a managerial position. *Id.*; *see also Buck v. Billings Mont. Chevrolet, Inc.*, 811 P.2d 537, 541 (Mont. 1991); *McConkey v. Flathead Elec. Co-op*, 125 P.3d 1121, 1127 (Mont. 2005).

Here, Pedersen occupied a managerial position as she was the Assistant

Store Manager. Her ability to exercise broad discretion while acting in that capacity is evidenced by the fact that she helped determine which employees would travel on the inventory trip and that she alone was assigned to travel to Kalispell to oversee those employees including a nineteen year old staffer. As such, T.J. Maxx is given greater discretion over its decision regarding her termination. *See Sullivan*, 299 P.3d at 835.

There is no question Pedersen drank with subordinate employees—one of whom was 19 years-old—while on a company trip and that alcohol was purchased before the inventory work commenced. Even though Pedersen argues that she was on her "own time" when the conduct in question occurred, T.J. Maxx determined her behavior violated its Code of Conduct and negatively impacted its trust in her as a supervisor. While the conduct in question may qualify as personal activity, the Code of Conduct specifically states that a conflict of interest exists if a personal activity interferes with the employee's duties or the interests of the company. (*See* Def.'s SUF, doc. 24 at ¶ 14.) The Code of Conduct further references the higher standards to which supervisors are held, especially in their interactions vis-a-vis subordinate employees. (*See id.* at ¶ 18.) For these reasons, in the absence of a factual dispute, the employer's decision stands.

Furthermore, in *Sullivan*, *McConkey*, and *Buck*, the Montana Supreme Court

found a business has legitimate interest in employing a manager whom it could trust in the day-to-day operation of the business. *Sullivan*, 299 P.3d at 836; *McConkey*, 125 P.3d at 1127; *Buck*, 811 P.2d at 541. Being able to trust that a supervisor will not engage in this type of conduct on a business trip logically relates to the needs of T.J. Maxx and how it operates its business. This is especially so when the conduct engaged in was illegal, in other words providing alcohol or making it available to a minor. Thus, T.J. Maxx acted within its discretion when it concluded Pedersen's conduct violated its Code of Conduct and that her termination served a legitimate business purpose. *See Berg*, * 5. As a result, TJX has demonstrated good cause for its decision, with no factual issue that the decision was pretextual.

Pedersen insists that because the notice of termination only noted the reason as "improper behavior," any other grounds provided by TJX are irrelevant and inadmissible. However, "evidence offered to substantiate the reasons already given in the termination letter [is] admissible." *McConkey*, 125 P.3d at 1127 (quotations and alterations omitted). Here, the termination form references "improper behavior," the Code of Conduct, the Conflict of Interest policy, and specifically states that Pedersen failed to "perform her duties with the interests of the company in mind" and "put herself in a situation in which her loyalty to the

company interests was compromised."  (Doc. 25-1.)  All of the arguments raised by TJX expand upon these initial disclosures, making them both relevant and admissible.

## II.     Pedersen has provided insufficient evidence to support a finding of pretext.

The record does not support a finding of pretext.  In attempting to show pretext, "[m]ere denial or speculation will not suffice, the non-moving party must show facts sufficient to raise a genuine issue." *Cecil v. Cardinal Drilling Co.*, 797 P.2d 232, 235 (Mont. 1990); *see also Johnson v. Costco Wholesale*, 152 P.3d 727, 734-35 (Mont. 2007) (rejecting the plaintiff's mere "speculation" that the stated reason for his termination was a pretext and granting summary judgment for the employer); *Mysse v. Martens*, 926 P.2d 765, 771 (Mont. 1996) (holding the plaintiff's allegation that she was a scapegoat was "mere speculation" and did "not rise to the level of a 'pretext.'")

Pedersen has not pointed to any specific facts to support her argument that TJX's proffered rationale for her discharge was a pretext.  Her entire pretext argument is based on her speculation that Store Manager Penny Dickey wanted to "squeeze" her out and hire new people.  (Def.'s SUF, doc. 24 at ¶ 54.)  However, Pedersen comes up with no facts to show that Dickey had any input in deciding to

terminate Pedersen's employment or that any statements made by Dickey about new hires, if made, were in any way related to her discharge. (*See id.* at ¶¶ 39-44.) Pedersen has failed to raise facts that could show, or imply, that the given reason for the discharge was "not the honest reason for the discharge." *Becker*, 191 P.3d at 441.

## CONCLUSION

Because TJX's rationale for terminating Pedersen's employment was based on legitimate business purposes and Pedersen merely speculates as to pretext, TJX is entitled to summary judgment as to all of Pedersen's claims. Based on the foregoing, TJX's motion for summary judgment (doc. 22) is GRANTED.

The Clerk is directed to enter judgment in favor of Defendant and against Plaintiff.

The Clerk is further ordered to notify the parties of the entry of this order and judgment.

Dated this 1st day of October, 2013.

DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT